IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MOSES CLARK, | ) | CASE NO. 1:17CV2078 |
| | ) | |
|       Petitioner, | ) | |
| | ) | JUDGE JEFFREY J. HELMICK |
|     v. | ) | |
| | ) | MAGISTRATE JUDGE |
| TIM BUCHANAN, | ) | JONATHAN D. GREENBERG |
| Warden | ) | |
| | ) | **REPORT & RECOMMENDATION** |
|       Respondent. | ) | **(Doc. Nos. 1, 7.)** |

This matter is before the undersigned pursuant to Local Rule 72.2.  Before the Court is the Petition of Moses Clark ("Clark" or "Petitioner"), for a Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254.  Clark is in the custody of the Ohio Department of Rehabilitation and Correction pursuant to journal entry of sentence in the case of *State v. Clark*, Cuyahoga County Court of Common Pleas Case No. CR-15-592368A.  For the following reasons, the undersigned recommends that the Petition be DENIED.

## I.  Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct unless rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see also Franklin v. Bradshaw*, 695

F.3d 439, 447 (6th Cir. 2012); *Montgomery v. Bobby*, 654 F.3d 668, 701 (6th Cir. 2011).  The

state appellate court summarized the facts underlying Clark's conviction as follows:

> {¶ 2} In 2015, Clark was charged with three counts of rape and three counts of kidnapping with sexual motivation specifications; the charges carried with them notices of prior convictions and one- and three-year firearm, repeat violent offender, and sexually violent offender specifications. The matter proceeded to a jury trial, at which the following pertinent evidence was presented.

> {¶ 3} In October 2006, 18–year–old "L.C." was walking near East 79th Street and St. Clair Avenue in Cleveland when a man pulled up in a car, flashed a black semi-automatic handgun, and told her to get in the car. He threatened to shoot her if she did not comply. L.C. did not know the man.

> {¶ 4} L.C. got into the car, and the man drove to the back of a church. The man made her get into the backseat of the car, take off her pants and underwear, and forced her to have vaginal intercourse. The man ejaculated inside of her, wiped himself off with a tissue and threw the tissue outside the car window. He told L.C. to get out of the car and count to 200.

> {¶ 5} L.C. counted until the man drove away and then ran to a store for help. She gave a description of her attacker to police. L.C. was taken to the hospital and underwent a rape kit examination. L.C. testified that she did not hear from the police again until 2015. In court, she identified pictures of the crime scene, including the tissue the man used to wipe himself off and the clothes she wore that day.

> {¶ 6} Retired nurse Karen Seguin ("Seguin") testified that she was a sexual assault nurse examiner at MetroHealth for 30 years. She treated L.C. in October 2006. Seguin collected information from L.C. about the rape and documented the narrative within the medical record. Seguin noted that there was slight injury to the area of L.C.'s perineum, which was consistent with the assault described by L.C. She documented that L.C. was calm, cooperative, and confident in the accuracy of the details of the rape but also anxious and upset.

> {¶ 7} "C.M." testified that she was 19 years old in October 2006 when she came home to Cleveland to visit family. She was walking home from the library when she noticed a car following her. A man, whom she did not know, was driving the car. A short time later, someone came up to her from behind, put something hard against her back, and said, "Get in the car, don't say nothing or I'm going to shoot you." The man led her to a car, which C.M. noticed as the same car that had been following her. The man, whom she thought to be around 40 years old, made her get in the car and drove to a church. She noted that he had a black gun.

2

{¶ 8} The man ordered C.M. to take her clothes off; she complied. The man told C.M. to "shut the f* * * up" and that if she made any noise, he would shoot her. He got on top of her and had vaginal intercourse with her. After he ejaculated in her, he took a tissue, gave it to her to wipe herself, took the tissue back, and then told her to get out of his car and count to 100.

{¶ 9} C.M. counted to 10, called the police from her cell phone, and called a friend. A friend took her to the hospital where medical personnel recommended she undergo a rape kit examination. C.M. declined the physical exam but allowed medical personnel to take the shorts she had been wearing at the time of the attack. C.M. identified, in court, photographs of the shorts and crime scene.

{¶ 10} Eileen Dillon ("Dilllon") testified that she was a registered nurse at St. Vincent Medical Center and had worked there for 47 years. Dillon treated C.M. in October 2006. Dillon documented the narrative of the sexual assault from what C.M. told her. She testified that C.M. declined to participate in a physical examination but allowed medical personnel to collect her clothing as evidence. Dillon observed that C.M. was tearful, anxious, emotionally upset, and complaining of vaginal pain.

{¶ 11} Cleveland Police Officer Martin Gray testified that, while on duty in October 2006, he responded to a house on Bellevue Avenue in Cleveland for a complaint of a rape that had just taken place. When he arrived, he encountered "C.S." and Ann Washington ("Washington"). He learned that the two women did not know each other, but that Washington had found C.S. walking down the street crying and brought her inside her house. C.S. was slumped over in a chair crying, and Washington was trying to comfort her.

{¶ 12} C.S. told Officer Gray that she was riding a bus and a man was making rude comments to her. She got off the bus, and the man followed her. The man, a black male in his thirties, pulled a handgun out of a bag. He pointed the gun at C.S. and made her get into a parked car. There was another male in the driver's seat of the car. The men drove C.S. to another location, where the driver forced her to have oral and vaginal intercourse. This male was approximately 40 years old and had a burn mark on his thigh. He did not wear a condom, and he ejaculated inside of her. After the assault, the men drove a short distance and kicked C.S. out of the car. C.S. ran across a field and down a street, where she encountered Washington.

{¶ 13} Michele Reali–Sorrell ("Reali–Sorrell") testified that she has been employed as a sexual assault nurse examiner since 2005. The nurse described the process of the rape kit examination and testified that her purpose in collecting and documenting the narrative of what the victim said happened to her or him is necessary to provide medical treatment to patients who have been sexually assaulted. Reali–Sorrell recalled C.S. and treating her after the assault. Reali–Sorrell identified the medial record pertaining to C.S.'s treatment and noted that C.S. was 20 years old at the time

of the assault.

{¶ 14} During her examination, C.S. complained of severe abdominal pain that she said was caused by a direct blow to that area. C.S. had a CT scan, which showed fluid in her abdomen. C.S. told the nurse her attacker threatened to kill her and grabbed, hit, and held her during the attack. During her time with C.S., Reali–Sorrell noted that the patient was tearful and soft-spoken. Reali–Sorrell further noted that the patient had a blood-tinged vaginal discharge.

{¶ 15} During her testimony, Reali–Sorrell read the following narrative taken from C.S.'s medical records:

> Patient states I got off the bus on 74th and St. Clair. I'm walking into Family Dollar parking lot, and this man kept talking to me walking behind me. He said, hey, hey, and pulled out a gun and said, b[* * *], you hear me. And then the other man pulled up the car and said, put her in the car. The man driving said this. The guy with the gun told me not to run and, b[* * *], get in the car.

> He opened the door and pushed me in the car and drove to a street called Addison. They were cussing me out, calling me a bitch and whore, and I ain't good for nothing. He kept saying he was going to shoot me. He went to abandoned—we went to an abandoned house on Addison. He made me suck his privates. He started to punch me because I wouldn't open my legs. I was screaming for help, telling him to get off me. The other guy was holding my hands behind my head. He pulled my pants down, and he did it to me.

> The other guy holding me down was laughing. Then the guy said, Oh, [* * *], I came at her. He threw my clothes at me and some tissue and told me to wipe my [* * *]. I did it. He told me—he took me to a field and told me to walk, don't turn around. The lady saw me crying and took me to her house and called the police.

{¶ 16} Washington testified that she lived on Bellevue Avenue in 2006. She was sitting on her porch drinking coffee when she saw a girl, whom she did not know, walking down the street, crying. Washington asked the girl if she could help. According to Washington, although the girl was clearly upset, she spoke clearly, was neatly dressed, and was not intoxicated. The girl told Washington what had happened to her, and the police were called.

{¶ 17} Ken Riolo ("Riolo") testified that he was employed as an investigator with

4

the Cuyahoga County Prosecutor's Office in the cold case unit. The office received a tip from the Bureau of Criminal Identification and Investigation ("BCI") that indicated that a common DNA profile in three victim's rape kits came from a single individual in the Cleveland area, Moses Clark. Riolo discovered that C.S. had died in April 2014; he located and interviewed the surviving victims.

{¶ 18} Riolo then located and interviewed Clark, who denied knowing any of the victims. Riolo showed Clark a photograph of each victim. Clark wrote "I don't know her" or "I don't recognize her" and initialed each of the victim's photos.

{¶ 19} Clark also denied any knowledge of the church where the rapes of L.C. and C.M. occurred and insisted he was at work when the rapes allegedly took place. Riolo collected buccal swabs from Clark to confirm the presence of his DNA in the rape kit evidence and personally dropped off the buccal swabs to BCI for testing.

{¶ 20} Riolo testified that he contacted Clark's employer at the time of the 2006 rapes, and the employer confirmed that Clark was not working when the attacks occurred.

{¶ 21} BCI forensic scientist Melissa Zielaskiewicz testified that Clark's DNA, collected by Riolo, was included in the sperm fraction of the DNA on both the vaginal samples and a portion of the napkin from L.C.'s rape kit. The expected frequency of occurrence of the DNA profile from the sperm fraction of the evidence was 1 in 164,200,000,000,000,000,000 (164 quintillion, 200 quadrillion) unrelated individuals. She also determined that Clark's DNA, collected by Riolo, was included in the sperm fraction of the DNA found on C.M.'s shorts with the expected frequency of occurrence of the DNA profile from the sperm fraction of the evidence was 1 in 7,018,000,000,000 (7 trillion, 18 billion) unrelated individuals. Finally, Zielaskiewicz determined that Clark's DNA, collected by Riolo, was included in the sperm fraction of the DNA on the vaginal samples from C.S.'s rape kit with the expected frequency of occurrence of the DNA profile from the sperm fraction of the evidence was 1 in 164,200,000,000,000,000,000 (164 quintillion, 200 quadrillion) unrelated individuals.

{¶ 22} The jury found Clark guilty of all counts: three counts each of rape with one- and three-year firearm specifications and kidnapping with one- and three-year firearm and sexual motivation specifications. The trial court convicted Clark of the notices of prior convictions and repeat violent offender and sexually violent offender specifications. The trial court determined that the rape and kidnapping offenses were not allied offenses of similar import and imposed a sentence of ten years to life on each of the rape and kidnapping counts with the rape counts to run consecutive to each other and the kidnapping counts to run concurrent. The trial court also imposed a three-year sentence on the firearm specifications, for a total sentence of 36 years to life. The court also classified Clark as a sexual predator.

*State v. Clark*, 67 N.E.3d 182, 2016 Ohio 4561 (Ohio App. 8th Dist. June 23, 2016).

## II. Procedural History

**A.      Trial Court Proceedings**

On January 7, 2015, a Cuyahoga County Grand Jury charged Clark with three counts of Rape in violation of Ohio Rev. Code § 2907.02(A)(2), each with one and three year firearm specifications, two notice of prior conviction specifications, two repeat violent offender specifications, and a sexually violent predator specification (Counts 1, 3, and 5); and three counts of Kidnapping in violation of Ohio Rev. Code § 2905.01(A)(4), each with one and three year firearm specifications, two notice of prior conviction specifications, two repeat violent offender specifications, a sexually violent predator specification, and a sexual motivation specification (Counts 2, 4, and 6).[1]  (Doc. No. 7-1, Exh. 1.)  Clark pled not guilty.  (Doc. No. 7-1, Exh. 2.)

On March 21, 2015, Clark filed a Motion for Dismissal due to Pre-Indictment Delay. (Doc. No. 7-1, Exh. 3.) Therein, Clark noted that, while the alleged offenses occurred in October 2006, he was not indicted until over eight years later, in January 2015.  (*Id*.)  He maintained his speedy trial and due process rights had been violated, arguing  "the long delay has impaired the defendant's ability to prepare a defense because witnesses have died, documents and other evidence are lost, memories are faded, and alibi witnesses cannot be found."  (*Id.*)  The State

---

[1] The indictment charged Clark with raping and kidnapping three different victims on various dates in October 2006.  Specifically, Counts 1 and 2 charged Clark with raping and kidnapping  "Jane Doe 1" on or about October 3, 2006; Counts 3 and 4 charged Clark with raping and kidnapping " Jane Doe 2" on or about October 10, 2006; and Counts 5 and 6 charged Clark with raping and kidnapping "Jane Doe 3" on or about October 31, 2006. (Doc. No. 7-1, Exh. 1.)

filed a Brief in Opposition on March 26, 2015.  (Doc. No. 7-1, Exh. 4.)

On March 27, 2015, the state trial court denied Clark's Motion to Dismiss.  (Doc. No. 7-1, Exh. 5.)

Jury trial commenced on May 26, 2015 as to the rape and kidnapping charges, and the firearm and sexual motivation specifications.  (Doc. No. 7-2.) On June 2, 2015, the jury found Clark guilty on all counts and on the firearm and sexual motivation specifications.  (Doc. No. 7-1, Exhs. 6, 7.)  A bench trial as to notice of prior conviction, repeat violent offender, and sexual violent predator specifications was conducted on June 26, 2015.  (Doc. No. 7-1, Exhs. 7, 8.) The state trial court found Clark guilty as to all of the above specifications.  (Doc. No. 7-1, Exh. 8.)

The trial court conducted a sentencing hearing on June 30, 2015, at which time Clark was sentenced to an aggregate prison sentence of 36 years to life.  (Doc. No. 7-1, Exh. 8.)  Clark was also found to be a sexual predator and advised of his reporting requirements.  (*Id.*)

**B.**     **Direct Appeal**

On July 31, 2015, Clark, through new counsel, filed a Notice of Appeal with the Court of Appeals for the Eighth Appellate District ("state appellate court").  (Doc. No. 7-1, Exh. 9.)  In his appellate brief, Clark raised the following assignments of error:

> I.      The trial court erred to Mr. Clark's prejudice by entering a verdict against the manifest weight of the evidence, in derogation of Mr. Clark's right to due process of law under the Fourteenth Amendment of the United States Constitution.
>
> II.     The trial court erred in admitting testimonial statements of C.S., without opportunity of cross-examination, in derogation of Defendant's Right of Confrontation, as protected by the Fourteenth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution.

III.     The trial court erred and committed plain error in admitting the narrative
         contained in the medical records of C.S.

IV.      The trial court erred to Mr. Clark's prejudice through its denial of his
         motion for pre-indictment delay.

V.       The trial court erred in its denial of Mr. Clark's motion for severance.

(Doc. No. 7-1, Exh. 10.)  The State filed a brief in response.  (Doc. No. 7-1, Exh. 11.)

On June 23, 2016, the state appellate court affirmed Clark's convictions and prison

sentences.  (Doc. No. 7-1, Exh. 13.)  *See also State v. Clark,* 67 N.E.2d 182, 2016 Ohio 4561

(Ohio App. 8th Dist. June 23, 2016).

On July 21, 2016, Clark filed a *pro se* Notice of Appeal with the Supreme Court of Ohio.

(Doc. No. 7-1, Exh. 14.)  In his Memorandum in Support of Jurisdiction, Clark raised the

following Proposition of Law:

I.       The Appellant was denied his Fifth and Fourteenth Amendment to the
         United States Constitution and Section 16, Article 1 of the Ohio
         Constitution when denial of his motion for pre-indictment delay.

(Doc. No. 7-1, Exh. 15.)  The State filed a Memorandum in Opposition on September 1, 2016.

(Doc. No. 7-1, Exh. 16.)

On December 28, 2016, the Supreme Court of Ohio declined to accept jurisdiction of the

appeal pursuant to S.Ct. Prac. R. 7.08(B)(4).  (Doc. No. 7-1, Exh., 17.)

**C.      Application to Reopen Appeal under Ohio App. R. 26(B)**

Meanwhile, on September 20, 2016, Clark filed a *pro se* Application to Reopen Appeal

pursuant to Ohio App. R. 26(B).  (Doc. No. 7-1, Exh. 18.)  Clark's Application raised the

following claim of ineffective assistance of appellate counsel:

I.       The appellant was denied effective assistance of appellate counsel on his
         first appeal as of right when he failed to properly raise his constitutional

8

right to the Confrontation Clause.

(*Id.*)  Therein, Clark argued that "an alleged rape victim, C.S., died before the state brought this case to trial" but "nevertheless and without a complaining witness, the trial court allowed police and forensic testimony to be presented to the jury that she was raped on October 31, 2006." (*Id.*)  Clark maintained that "the trial court was in error." (*Id.*)

On January 18, 2017, the state appellate court denied Clark's Application on the grounds that "the grounds raised in support of his sole proposed assignment of error were previously determined to be without merit" by the state appellate court on direct appeal and, therfore, barred by the doctrine of *res judicata*.  (Doc. No. 7-1, Exh. 19.)  The state appellate court further noted Clark had failed to comply with App. R. 26(B)(2)(d), which requires an applicant to attach to the Application for reopening "a sworn statement of the basis for the claim that appellate counsel's representation was deficient."  (*Id.*)

On February 17, 2017, Clark filed a *pro se* Notice of Appeal to the Supreme Court of Ohio.  (Doc. No. 7-1, Exh. 20.)  In his Memorandum in Support of Jurisdiction, Clark raised the following assignment of error:

> I.     The Appellant was denied the effective assistance of appellate counsel on his first appeal as of right when he failed to **properly** raise his constitutional right to the Confrontation Clause.

(Doc. No. 7-1, Exh. 21) (emphasis in original).

On May 17, 2017, the Supreme Court of Ohio declined to accept jurisdiction of Clark's appeal pursuant to S.Ct. Prac. R. 7.08(B)(4).  (Doc. No. 7-1, Exh. 22.)

**D.     Federal Habeas Petition**

9

On September 19, 2017,[2] Clark filed a *pro se* Petition for Writ of Habeas Corpus in this Court and asserted the following grounds for relief:

> **GROUND ONE**:    The Petitioner was denied his Fifth and Fourteenth Amendment to the United States Constitution when denial of his Motion for Pre-Indictment Delay.

> **GROUND TWO**:    The Petitioner was denied effective assistance of appellate counsel on his first appeal as of right when he failed to properly raise his constitutional right to the Confrontation Clause.

(Doc. 1.)  On January 18, 2018, Warden Tim Buchanan ("Respondent") filed his Return of Writ. (Doc. No. 7.)  Clark did not file a Traverse.

### III.  Exhaustion and Procedural Default

**A.**    **Legal Standard**

Petitioners must exhaust their state remedies prior to raising claims in federal habeas corpus proceedings.  *See* 28 U.S.C. § 2254(b),(c).  This requirement is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims."  *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir.1990).

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice.  *See Lundgren v.*

---

[2]  Under the mailbox rule, the filing date for a *pro se* petition is the date that a petitioner delivers it to prison authorities.  *See Houston v. Lack*, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988).  While the Petition herein did not arrive at the Court for filing until October 2, 2017, Clark states that  he placed it in the prison mailing system on September 19, 2017.  (Doc. No. 1 at 14.)  Thus, the Court will consider the Petition as filed on September 19, 2017.

*Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977)).  A claim may become procedurally defaulted in two ways. *Id.*  First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court.  *Id.; see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  If, due to petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.[3]  *Id.*

Second, a petitioner may also procedurally default a claim by failing to raise and pursue that claim through the state's "ordinary appellate review procedures."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 848, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999).  If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted. *Engle v. Isaac,* 456 U.S. 107, 125 n. 28, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731–32, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Lovins v. Parker*, 712 F.3d 283, 295 (6th Cir. 2013) ("a claim is procedurally defaulted where the petitioner failed to exhaust state court remedies, and the remedies are no longer available at the time the federal petition is filed because of a state procedural rule.")  This second type of procedural default is often confused with exhaustion.  Exhaustion and procedural default,

---

[3] In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a claim is procedurally defaulted.  *Maupin*, 785 F.2d at 135. Under this test, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an "independent and adequate" state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and "prejudice."  *Id.* at 138–39; *Barkley v. Konteh*, 240 F. Supp.2d 708 (N.D. Ohio 2002).

however, are distinct concepts.  AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition."  *Engle*, 456 U.S. at 125 n. 28.  Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review.  *Id*.  In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal.  *Id.*  Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted.  *Id.*

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his claim.  *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue-not merely as an issue arising under state law."  *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984).  A petitioner can take four actions in his brief which are significant to the determination as to whether a claim has been fairly presented as a federal constitutional claim: (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law.  *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).

A petitioner's procedural default, however, may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error.  *See Maupin*, 785 F.2d at 138–39. "Demonstrating cause requires showing that an 'objective factor external to the

defense impeded counsel's efforts to comply' with the state procedural rule." *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) (quoting *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986)).  Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with constitutional error." *Id.*  Where there is strong evidence of a petitioner's guilt and the evidence supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied.  *See United States v. Frady*, 456 U.S. 152, 172, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *Perkins v. LeCureux*, 58 F.3d 214, 219–20 (6th Cir. 1995); *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994).  Prejudice does not occur unless petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been different.  *See Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003) (citing *Strickler v. Greene*, 527 U.S. 263, 289, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999)).

Finally, a petitioner's procedural default may also be excused where a petitioner is actually innocent in order to prevent a "manifest injustice."  *See Coleman v. Thompson*, 501 U.S. 722, 749–50, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).  Conclusory statements are not enough—a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial."  *Schlup v. Delo*, 513 U.S. 298, 324, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995).  *See also Jones v. Bradshaw*, 489 F. Supp.2d 786, 807 (N.D. Ohio 2007); *Allen v. Harry*, 2012 WL 3711552 at * 7 (6th Cir. Aug. 29, 2012).

B.     **Application to Petitioner**

1.     **Ground Two: Ineffective Assistance of Appellate Counsel**

In his second ground for relief, Clark argues he "was denied effective assistance of

13

appellate counsel on his first appeal as of right when he failed to properly raise his constitutional right to the Confrontation Clause." (Doc. No. 1 at 9.)  He asserts he "never had an opportunity, either face to face, nor a prior opportunity to cross-examine C.S., therefore, C.S. was unavailable for confrontation purposes." (*Id*. at 10.)  Clark also complains, at length, that the trial court improperly allowed Nurse Reali-Sorrell, Officer Gray, and Ms. Washington to testify regarding statements made by C.S. in the hours after her rape and kidnapping. (*Id*. at 10-13.)  He maintains his trial counsel was deficient because he "failed to properly raise the claim as determined by *Crawford* and *Davis*," thereby depriving him of "any real review of his Confrontation Clause claim." (*Id*. at 14.)

Respondent argues Clark's second ground for relief is procedurally defaulted for two reasons. (Doc. No. 7 at 11, 21-28.)  Respondent first argues this claim is defaulted "because Clark's appellate counsel did, in fact, present confrontation on direct appeal, and thus the second presentation of the same issue in Clark's Application to reopen was barred by *res judicata*." (*Id*.)  Respondent next argues Clark's claim is defaulted for the additional reason that it was rejected by the state appellate court because Clark failed to attach the affidavit required under Ohio App. R. 26(B)(2)(d). (*Id*. at 11-12.)  Respondent then notes that, even if Clark's ineffective assistance of appellate counsel claim were construed as raising his underlying Confrontation Clause claim, that claim is also defaulted because Clark failed to raise it on direct appeal to the Supreme Court of Ohio. (*Id*. at 13.)  Finally, Respondent argues Clark is unable to demonstrate either cause or prejudice to excuse the default. (*Id*. at 27-28.)

Clark did not file a Traverse and, therefore, Respondent's arguments regarding procedural default are unopposed.

The record reflects Clark first raised a claim of ineffective assistance of appellate counsel in his Application to Reopen under Ohio App. R. 26(B).  (Doc. No. 7-1, Exh. 18.)  On January 17, 2017, the state appellate court denied Clark's Application, as follows:

{¶ 4} Clark raises one proposed assignment of error in support of his application for reopening. Clark's sole proposed assignment of error is that:

> The appellant was denied effective assistance of appellate counsel on his first appeal as of right when he failed to properly raise his constitutional right to the confrontation clause.

{¶ 5} Clark, through his assignment of error, argues that his right to confront the victim was violated because she was deceased at the time of trial. Specifically, Clark argues that the trial court erred by admitting into evidence the statements made by the deceased victim to a police officer and further erred by allowing the narrative from the victim's medical records into evidence.

{¶ 6} **The issues raised through Clark's sole proposed assignment of error, the admission into evidence of the deceased victim's statements and the deceased victim's medical records, were previously addressed upon direct appeal to this court and found to be without merit**. With regard to the issue that the trial court erred in admitting into evidence the statements of the deceased victim, this court in *State v. Clark, supra*, held that:

> In the second assignment of error, Clark argues that the trial court erred in admitting statements that [the victim] made to Officer Gray. During trial, Officer Gray testified that he was one of the police officers who first arrived on scene to Ann Washington's house, responding to a call that a female had just been raped. When he arrived, he found [the victim] slumped over in a chair, upset and crying. At this point in Officer Gray's testimony, defense counsel objected, but the trial court overruled the objection. Officer Gray testified that [the victim] told him that she was riding the RTA bus with a friend but decided to get off because a man was bothering her. The man also got off the bus, followed her, and pulled out a gun on her.

> Defense counsel objected again at this point, and the trial court expressed its concern that the state had not laid the proper foundation for admission of [the victim's] statement as an excited utterance exception to hearsay. Defense counsel argued the [the victim's] statements were not excited utterances and admission of

15

her statements would violate Clark's right to confront witness within the meaning of *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). The trial court determined that [the victim's] statements were indeed excited utterance and did not violate *Crawford* because the officer's questioning was designed to address the emergency at hand.

\* \* \*

Officer Gray testified that [the victim]'s statements to him were made as soon as he responded to the scene and within ten minutes of when the 911 call came into dispatch. Officer Gray and Washington each testified that [the victim] was crying and upset throughout the interview; Officer Gray testified that Washington had her open hand on [the victim]'s back trying to comfort and calm her. Under these facts, the trial court did not abuse its discretion in finding that [the victim]'s statements to Officer Gray fell within the "excited utterances" exception to the hearsay rule.

*Clark* at ¶ 30–32, 35.

{¶ 7} In addition, with regard to the right of confrontation, this court held that:

Next, we determine whether Clark's right of confrontation was violated.

\* \* \*

In *Davis v. Washington*, 547 U.S. 813, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006), the United States Supreme Court found the statements made with the "primary purpose" of enabling police to meet and "ongoing" emergency are not testimonial. *Id*. at 826.

\* \* \*

Under these circumstances, [the victim's] primary purpose in talking to the police officer was to receive assistance from him and the police officer's primary purpose was to assist [the victim]. Even though [the victim's] statements to Officer Gray may be later used in court, it cannot be said that Officer Gray was seeking to develop [the victim's] testimony about past events for a criminal proceeding. *See State v. Goshade*, 1st Dist. Hamilton No. C–120586, 2013–Ohio–4457, ¶ 17.

16

> Therefore, considering the totality of the circumstances, we find that [the victim]'s statements were not testimonial and, therefore, the trial court did not err in allowing those statements into evidence under the excited utterance exception to the hearsay rule.
>
> * * *

*Clark* at ¶ 36, 38–41.

{¶ 8} Finally, with regard to the admission into evidence of [the victim's] medical records, this court held that:

> In the third assignment of error, Clark argues that the trial court erred when it allowed the narrative from [the victim]'s medical records into evidence.
>
> * * *
>
> As with [the victim], the victim in [*State v. Echols*, 8th Dist. Cuyahoga No. 102504, 2015–Ohio–5138], died before trial. The [the victim]'s treating physician read a lengthy narrative into the record that included what she was doing before she was attacked and detailed circumstances of the attack. In this case, [nurse] Reali–Sorrell testified that it was important to collect information about the assault to understand what happened to [the victim], what her injuries might be, and to know how to treat her. Clark fails to point to any evidence, and we found none in our review of [nurse] Reali–Sorrell's testimony, that shows that the nurse was collecting the information primarily to be used in later criminal proceedings. Thus, the trial court did not commit plain error when it allowed the nurse's testimony with regard to [the victim]'s medical records into evidence pursuant to Evid.R. 803(4).
>
> In light of the above, we find that Clark's Sixth Amendment rights were not violated by Officer Gray's or nurse Reali–Sorrell's testimony and the trial court did not abuse its discretion in allowing the testimony into evidence.
>
> The second and third assignments of error are overruled.

*Clark* at ¶ 42, 46–49.

**{¶ 9} Clark's claim, that his right to confrontation under the Sixth Amendment was violated by the trial court admitting the statements of the**

deceased victim and further allowing the narrative from the victim's medical records admitted into evidence, is barred from further review by the doctrine of *res judicata*. **The issues presently raised in support of his sole proposed assignment of error were previously determined to be without merit in *Clark, supra*. Clark is not permitted to relitigate issues that were previously raised on appeal and found to be without merit**. *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970); *State v. Crago*, 93 Ohio App.3d 621, 639 N.E.2d 801 (10th Dist.1994); *State v. Williamson*, 8th Dist. Cuyahoga No. 102320, 2015–Ohio–4482; *State v. Day*, 8th Dist. Cuyahoga No. 67767, 1995 Ohio App. LEXIS 4847, 1995 WL 643712 (Nov. 2, 1995). Clark has failed to establish any prejudice through his sole proposed assignment of error.

{¶ 10} **Finally, we find that Clark has failed to comply with App.R. 26(B)(2)(d), which mandates that the applicant must attach to the application for reopening "a sworn statement of the basis for the claim that appellate counsel's representation was deficient."** *State v. Doles*, 75 Ohio St.3d 604, 665 N.E.2d 197 (1996); *State v. Lechner*, 72 Ohio St.3d 374, 650 N.E.2d 449 (1995); *State v. Bates*, 8th Dist. Cuyahoga Nos. 97631, 97632, 97633, and 97634, 2015–Ohio–4176.

{¶ 11} Accordingly, the application for reopening is denied.

*State v. Clark*, 2017 WL 242006 (Ohio App. 8th Dist. Jan. 18, 2017) (emphasis added).

The Court finds Clark's ineffective assistance of appellate counsel is claim is procedurally defaulted.  As the state appellate court correctly noted, Clark's appellate counsel did, in fact, raise the issues identified in habeas Ground Two on direct appeal, where the state appellate court considered and rejected them on the merits.  Clark improperly attempted to relitigate these claims in his 26(B) Application, and the state appellate court expressly denied his Application on the basis of *res judicata*.  As such, the Court finds Clark failed to comply with an applicable state procedural rule and the state courts actually enforced the procedural bar, thus satisfying the first and second prongs of *Maupin, supra*.  Further, as to the third prong of *Maupin*, "the Sixth Circuit has stated that *res judicata* 'is an actually enforced, adequate and independent ground upon which the Ohio state courts consistently refuse to review the merits of a defendant's claims." *Collins v.*

18

*Warden, Ross Correctional Inst.*, 2014 WL 575727 at * 11 (N.D. Ohio Feb. 11, 2014) (quoting *Powers v. Bobby*, 2008 WL 4823134 (N.D. Ohio Nov. 3, 2008)).  *See also Coleman v. Mitchell*, 268 F.3d 417, 427 (6th Cir. 2001); *Williams v. Bagley*, 380 F.3d 932, 966-967 (6th Cir. 2004); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001); *Carley v. Hudson*, 563 F.Supp.2d 760, 774 (N.D. Ohio May 30, 2008).  Thus, the Court finds Clark's second ground for relief is procedurally defaulted due to the state appellate court's enforcement of the doctrine of *res judicata*.

The Court further finds this claim is defaulted due to the Clark's failure to comply with Ohio App. R. 26(B)(2)(d).  That rule requires that an Application to Reopen must contain:

> (d) A sworn statement of the basis for the claim that appellate counsel's representation was deficient with respect to the assignments of error or arguments raised pursuant to division (B) (2)(c) of this rule and the manner in which the deficiency prejudicially affected the outcome of the appeal, which may include citations to applicable authorities and references to the record[.]

App. R. 26(B)(2)(d).  *See State v. Lechner*, 72 Ohio St.3d 374, 650 N.E.2d 449 (Ohio 1995) (sworn statement required by App. R. 26(B)(2)(d) is "mandatory").  Here, the state appellate court denied Clark's application on the alternative grounds that it was procedurally defective because Clark failed to attach a sworn affidavit as required by App. R. 26(B)(2)(d).  *State v. Clark*, 2017 WL 242006 at * 3.

Applying the *Maupin* factors, the Court finds that Ground Two is procedurally defaulted for the additional reason that Clark failed to comply with  App. R. 26(B)(d)(2).  As noted above, the state appellate court enforced the procedural rule when it denied Clark's application, in part, because he failed to attach a sworn affidavit as required by App. R. 26(B)(d)(2).  Thus, the first and second prongs of *Maupin* are satisfied.  As to the third prong of *Maupin*, courts in this District have found that App. R. 26(B)(2)(d) is an adequate and independent state ground on

which the state can foreclose review of a defendant's claim.  *See, e.g., Phillips v. Turner,* 2017 WL 9476856 at * 14 (N.D. Ohio April 25, 2017) ("Phillips procedurally defaulted the ineffective-assistance claim by failing to submit a sworn statement with his application as required by Ohio Appellate Rule 26(B)(2)(d), a violation on which the state appellate court clearly and expressly based its denial of his application.); *Harrison v. Ohio Dept. Of Rehabilitation and Correction*, 2015 WL 542338 at * 12-13 (N.D. Ohio Feb. 10, 2015) (same); *Gooden v. Bradshaw*, 2014 WL 4245951 at * 10-11 (N.D. Ohio August 25, 2014).  *See also Thompson v. Anderson*, 2010 WL 4025936 at * 7 (N.D. Ohio Mar. 19, 2010), *report and recommendation adopted*, 2010 WL 4026121 (N.D. Ohio Oct. 13, 2010) ("[T]he requirement of a sworn supporting affidavit satisfying Rule 26(B)(2)(d) is firmly established and regularly followed, so as to constitute an adequate and independent state procedural rule."); *Belcher v. Smith*, 2010 WL 256501 at *6 (N.D. Ohio Jan. 21, 2010) ("This case, however, poses a distinct question as to the third prong of *Maupin*, i.e., whether the requirement of a sworn supporting affidavit within Rule 26(B)(2)(d) was firmly established and regularly followed, so as to constitute an adequate and independent state procedural rule, a proposition which this Court finds to be true.").

Accordingly, the Court finds Clark's second ground for relief is procedurally defaulted for the additional reason that the state appellate court denied his Application due to his failure to submit a sworn affidavit as required by Ohio App. R. 26(B)(2)(d).

In light of the above, the Court finds Clark's ineffective assistance of appellate counsel claim as raised in Ground Two of his Petition is procedurally defaulted.  Clark may nevertheless obtain a merits review of this claim if he can demonstrate cause for the default and prejudice

resulting therefrom, or that failure to review the claim would result in a fundamental miscarriage of justice. *See Lundgren*, 440 F.3d at 763. Clark makes no argument regarding any of these issues. He did not file a Traverse or otherwise address the issue of procedural default in his habeas filings, making no clear argument that there exists either cause or prejudice. Thus, the Court finds Clark has failed to establish cause or prejudice to excuse the default.

Construed liberally, Clark's Petition does appear to claim, generally, that he is innocent of the charges against him. A petitioner's procedural default may also be excused where a petitioner is actually innocent in order to prevent a "manifest injustice." *See Coleman*, 501 U.S. at 749–50. However, conclusory statements are not enough—a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup*, 513 U.S. at 324. While Clark asserts he is innocent, he has failed to support this allegation with any evidence, much less new, reliable evidence that was not presented at trial. Clark's default cannot be excused on this basis.

In light of the above, the Court finds Ground Two as set forth in the Petition is procedurally defaulted. Moreover, Clark has failed to established cause and prejudice to excuse the default and has not come forward with any evidence of "actual innocence." Accordingly, the Court will not reach the merits of his Second Ground for Relief.[4]

---

[4] As noted above, Clark's Second Ground for Relief clearly asserts a claim of ineffective assistance of appellate counsel. However, to the extent such claim could be liberally construed as asserting the underlying Confrontation Clause and evidentiary claims identified therein, the Court finds such claims would also be procedurally defaulted. The record reflects Clark asserted several claims on direct appeal to the state appellate court regarding the admission of testimonial statements of C.S. without opportunity for cross-examination. (Doc. No. 7-1, Exh. 10.) The state appellate court considered these claims on the merits and

## IV.  Review on the Merits

**A.**  **Legal Standard**

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA"), 28 U.S.C. § 2254.  *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337, 117 S.Ct. 2059,

138 L.Ed.2d 481 (1997).  The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to
> any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim–
>
>> (1) resulted in a decision that was contrary to, or involved an
>> unreasonable application of, clearly established Federal law, as
>> determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable
>> determination of the facts in light of the evidence presented in the State
>> court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law is to be determined by the holdings (as opposed to the

---

denied them.  (Doc. No. 7-1, Exh. 13.)  Clark appealed the state appellate court decision, but failed to raise any claims regarding the admission of C.S.'s testimonial statements on direct appeal to the Supreme Court of Ohio. (Doc. No. 7-1, Exh. 15.)  Federal courts have found a habeas claim is procedurally defaulted if a petitioner fails to raise it before the state's highest court after raising it on the first level of appeals. *See e.g., Hamilton v. Gansheimer*, 536 F.Supp.2d 825, 831-832 (N.D. Ohio 2008).  Indeed, "a claim raised in the state Court of Appeals but not in the state Supreme Court cannot be considered in federal habeas." *Morales v. Coyle*, 98 F.Supp.2d 849, 862 (N.D.Ohio 2000) (citing *Leroy v. Marshall*, 757 F.2d 94, 100 (6th Cir.1985); *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999)).  Thus, even if the Court were to construe Clark's Second Ground for Relief as asserting the underlying Confrontation Clause and evidentiary claims identified therein, such claims would be defaulted due to Clark's failure to raise them on direct appeal to the Ohio Supreme Court. Moreover, as discussed above, Clark has neither argued or demonstrated cause or prejudice to excuse the default.

dicta) of the United States Supreme Court.  *See Parker v. Matthews*, 567 U.S. 37, 132 S.Ct. 2148, 183 L.Ed.2d 32 (2012); *Renico v Lett*, 559 U.S. 766, 130 S.Ct. 1855, 1865-1866 (2010); *Williams v. Taylor*, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Shimel v. Warren,* 838 F.3d 685, 695 (6th Cir. 2016); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005).  Indeed, the Supreme Court has indicated that circuit precedent does not constitute "clearly established Federal law, as determined by the Supreme Court."  *Parker*, 567 U.S. at 48-49;  *Howes v. Walker*, 567 U.S. 901, 132 S.Ct. 2741, 183 L.Ed.2d 612 (2012).  *See also Lopez v. Smith*, ––– U.S. ––––, 135 S.Ct. 1, 4, 190 L.Ed.2d 1 (2014) (per curiam) ("Circuit precedent cannot 'refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that this Court has not announced.' " (quoting *Marshall v. Rodgers*, 569 U.S. 58, 133 S.Ct. 1446, 1450, 185 L.Ed.2d 540 (2013))).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  *Williams v. Taylor*, 529 U.S. at 413.  By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id*.  *See also Shimel*, 838 F.3d at 695.  However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly."  *Williams v. Taylor,* 529 U.S. at 411.  Rather, a federal district court must determine whether the state court's decision

23

constituted an objectively unreasonable application of federal law.  *Id.* at 410-12.  "This standard generally requires that federal courts defer to state-court decisions."  *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006) (citing *Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

In *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011), the Supreme Court held that as long as "fairminded jurists could disagree on the correctness of the state court's decision," relief is precluded under the AEDPA.  *Id.* at 786 (internal quotation marks omitted).  The Court admonished that a reviewing court may not "treat[ ] the reasonableness question as a test of its confidence in the result it would reach under *de novo* review," and that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."  *Id*. at 785.  The Court noted that Section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems" and does not function as a "substitute for ordinary error correction through appeal."  *Id*. (internal quotation marks omitted).  Therefore, a petitioner "must show that the state court's ruling ... was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Id*. at 786–87.  This is a very high standard, which the Supreme Court readily acknowledged.  *See id.* at 786 ("If this standard is difficult to meet, that is because it is meant to be.")

### 1.     Ground One: Pre- Indictment Delay

In his first ground for relief, Clark argues his due process rights were violated by the more than eight year delay between the October 2006 offenses and his January 2015 indictment.  (Doc. No. 1.)  He maintains that "pre-indictment delay may be found unjustifiable when the state

effectively ceases the active investigation of a case, but later decides to commence prosecution upon the same evidence that was available to it at the time its active investigation ceased." (*Id*. at 7.) In this regard, Clark argues the delay in the instant case was unjustifiable because he claims that, as of October 2006, the State was aware of his identity, had access to his DNA,[5] and "was able to identify whose DNA was signaled out of for alleged criminal activity had they chose to do so." (*Id*. at 9.) Clark further asserts he was actually prejudiced by the delay, citing the death of one of the alleged victims ("C.S.") and the "confused testimony" of another victim ("L.C."). Specifically, he claims "the prejudice is that the state refused to prosecute the case when their witness was fresh, memory was clear, and the defense could then question the truth of the matter without sworn answers of 'I don't remember,' 'I don't know,' and ' . . . it was so long ago.'" (*Id*.)

The record reflects Clark raised a claim regarding pre-indictment delay on direct appeal to both the state appellate court and the Supreme Court of Ohio. (Doc. No. 7-1, Exhs. 10, 15.) The state appellate court considered this claim on the merits and denied it, as follows:

{¶ 50} In the fourth assignment of error, Clark argues that the trial court erred in denying his motion to dismiss due to preindictment delay. We disagree.

{¶ 51} "An unjustifiable delay between the commission of an offense and a defendant's indictment therefor, which results in actual prejudice to the defendant, is a violation of the right to due process of law [.]" *State v. Luck*, 15 Ohio St.3d 150, 472 N.E.2d 1097 (1984), paragraph two of the syllabus. A two-part test is applied in order to determine whether preindictment delay constitutes a due process violation. *State v. Powell*, 8th Dist., 2016-Ohio-1220, 61 N.E.3d 789, ¶ 12. The defendant has the initial burden to show that he or she was substantially and actually prejudiced because of the delay. *State v. Dixon*, 8th Dist., 2015-Ohio-3144, 40 N.E.3d 601, ¶ 19,

---

[5] In his Motion to Dismiss the Indictment, Clark states he was serving a prison term in an unrelated criminal case in the years prior to his January 2015 indictment. (Doc. No. 7-1, Exh. 3 at PageID# 114.) He further states he was detained and served with an arrest warrant in the underlying criminal case in the instant matter, as he was being released from Grafton Correction Institution on his prior case. (*Id*.)

citing *State v. Whiting*, 84 Ohio St.3d 215, 217, 702 N.E.2d 1199 (1998). If actual prejudice is demonstrated, the burden then shifts to the state to produce evidence of a justifiable reason for the delay. *Powell* at *id*., citing *Dixon* at *id*. Decisions granting or denying a motion to dismiss for preindictment delay are reviewed for an abuse of discretion. *State v. Owens*, 8th Dist. Cuyahoga No. 102276, 2015-Ohio-3881, 2015 WL 5608250, ¶ 2, citing *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 33.

{¶ 52} Clark cites this court's recent *en banc* in *State v. Jones,* 2015-Ohio-2853, 35 N.E.3d 606, ¶ 37 (8th Dist.), appeal allowed, 143 Ohio St.3d 1542, 2015-Ohio-4633, 40 N.E.3d 1179, to support his position that he was prejudiced by the delay in prosecution. In *Jones*, almost 20 years passed before the state indicted the defendant on rape charges, even though the victim had immediately identified "Demetrius" as her attacker. This court evaluated the actual prejudice prong of the two-part test in terms of basic concepts of due process and fundamental justice. The court found that Jones "suffered actual prejudice" as the matter was one where the state simply failed, or refused, to take action for a substantial period. *Id*. at ¶ 56.

{¶ 53} This case is distinguishable from *Jones*. First, the delay in prosecuting Jones was almost 20 years; in this case the delay was 8 years. In *Jones*, Jones claimed an inability to offer evidence from his mother, deceased by the time of trial, who was in the house at the time of the incident rape and could have corroborated the defendant's claim that he and the victim were in a relationship and that there was no violent fight as described by the victim. In addition, the defendant argued that the victim's clothing she wore on the night of the alleged offense had been destroyed, thus denying him the opportunity to examine it and undermine her claim that she and Jones engaged in a violent fight. Unlike *Jones*, in this case there is no allegation of missing or destroyed evidence. More importantly, perhaps, is that Clark's identity as the serial rapist was unknown until August 27, 2014, and he was indicted shortly thereafter on January 7, 2015, after an investigation and re-verification of the DNA matches.

{¶ 54} Clark claims that he was prejudiced by the death of C.S. and the other victim's foggy memories. We consider the Ohio Supreme Court case of *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, in which the court stated that

> [t]he death of a potential witness during the preindictment period can constitute prejudice, but only if the defendant can identify exculpatory evidence that was lost and show that the exculpatory evidence could not be obtained by other means.

*Id*. at ¶ 103, citing *United States v. Rogers*, 118 F.3d 466, 475 (6th Cir.1997). Clark has not identified any exculpatory evidence that has been lost, let alone show how that evidence could not be otherwise obtained. *See also State v. Jones*, 8th Dist.,

2015-Ohio-5540, 57 N.E.3d 155, ¶ 10. Moreover, the alleged lapses in the surviving victim's memories was based on their testimony at trial, which occurred after Clark's motion was denied. "The law requires a defendant to do more than offer mere speculation as to how he [or she] was prejudiced by any delay because requiring less would undermine the statute of limitations." *Owens*, 8th Dist. Cuyahoga No. 102276, 2015-Ohio-3881, 2015 WL 5608250, at ¶ 5; *see also State v. Wilson*, 8th Dist., 2016-Ohio-2718, 51 N.E.3d 676, ¶ 70, citing *State v. Thomas*, 8th Dist. Cuyahoga No. 101202, 2015-Ohio-415, 2015 WL 477228, ¶ 11 (This court has consistently held that speculation does not show actual prejudice.).

{¶ 55} Thus, the trial court did not err in denying Clark's motion to dismiss based on preindictment delay. The fourth assignment of error is overruled.

*State v. Clark*, 67 N.Ed.3d 182, 2016 Ohio 4561 (Ohio App. 8th Dist. June 23, 2016).

At the outset, the Court notes that Clark has neither alleged nor established a violation of his Sixth Amendment right to a speedy trial.  As the Supreme Court has explained, it is "either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engage the particular provision of the Sixth Amendment."  *United States v. Marion*, 404 U.S. 307, 320, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971).  *See also Parker v. Burt*, 595 Fed. Appx. 595, 600 (6th Cir. 2015) ("[T]he Sixth Amendment's Speedy Trial Clause protects against excessive postindictment delay." ); *White v. Warden, Chillicothe Correctional Institution*, 2018 WL 3389908 at * 12 (S.D. Ohio July 12, 2018) ("The Speedy Trial Clause of the Sixth Amendment is not triggered until a formal indictment or information is filed or the "actual restraints imposed by arrest and holding to answer a criminal charge" have occurred.").  Here, Clark has not alleged his constitutional rights were violated by any delay between his indictment and trial.  Rather, Ground One asserts a constitutional violation based on the delay between the alleged offenses and the indictment and, therefore, states a claim under the Due Process Clause.

The United States Supreme Court has found that the Due Process Clause of the Fifth

Amendment requires the dismissal of charges based on pre-indictment delay only where it is shown that the delay caused " substantial prejudice" to the Petitioner's rights to a fair trial and was an "intentional device to gain tactical advantage over the accused."  *Marion*, 404 U.S. at 322.  *See also United States v. Lovasco*, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977). Consistent with this Supreme Court authority, the Sixth Circuit has held that "dismissal for pre-indictment delay is warranted only when the defendant shows (1) substantial prejudice to his right to a fair trial and (2) that the delay was an intentional device by the government to gain a tactical advantage."  *United States v. Brown*, 959 F.2d 63, 66 (6th Cir.1992) (internal quotation marks omitted) (alterations in original).  *See also Parker,* 595 Fed. Appx. at 601; *Wolfe v. Bock*, 253 Fed. Appx. 526, 531-532 (6th Cir. 2007); *McKissic v. Birkett*, 200 Fed.Appx. 463, 469–70 (6th Cir.2006).

With regard to the first element, federal courts have explained that mere speculation is insufficient to show substantial prejudice.  *See e.g., Marion*, 404 U.S. at 325-326 (finding the possibility "that memories will dim, witnesses become inaccessible, and evidence be lost" is not sufficient to show prejudice from the delay); *Gales v. Clipper*, 2018 WL 2473672 at * 8 (N.D. Ohio May 15, 2018) (habeas petitioner failed to show prejudice where "he did not detail what the witnesses, whose memories are alleged to have faded, would have testified to"); *Randle v. Jackson*, 544 F.Supp.2d 619, 631 (E.D. Mich. 2008) (finding "a vague assertion that memories have diminished, witnesses have been lost, and documents have been misplaced does not establish actual prejudice from a pre-charge delay").

With regard to the second element, it is well-established that a delay resulting from investigative efforts "does not deprive [a defendant] of due process, even if his defense may have

28

been somewhat prejudiced by the lapse of time." *United States v. Atisha*, 804 F.2d 920, 928 (6th Cir.1986) (citations omitted), *cert. denied*, 479 U.S. 1067, 107 S.Ct. 955, 93 L.Ed.2d 1003 (1987); *see also United States v. Rogers*, 118 F.3d 466, 476 (6th Cir. 1997).  As the Supreme Court has explained:

> In our view, investigative delay is fundamentally unlike delay undertaken by the Government solely "to gain tactical advantage over the accused," *United States v. Marion*, 404 U.S., at 324, 92 S.Ct., at 465, precisely because investigative delay is not so one-sided. [footnote omitted]. Rather than deviating from elementary standards of "fair play and decency," a prosecutor abides by them if he refuses to seek indictments until he is completely satisfied that he should prosecute and will be able promptly to establish guilt beyond a reasonable doubt. Penalizing prosecutors who defer action for these reasons would subordinate the goal of "orderly expedition" to that of "mere speed," *Smith v. United States*, 360 U.S. 1, 10, 79 S.Ct. 991, 997, 3 L.Ed.2d 1041 (1959). This the Due Process Clause does not require. We therefore hold that to prosecute a defendant following investigative delay does not deprive him of due process, even if his defense might have been somewhat prejudiced by the lapse of time.

*Lovasco*, 431 U.S. at 795.  Moreover, where the pre-indictment delay is caused merely by negligence on the part of prosecutors or police, no due process violation exists.  *See e.g., Rogers*, 118 F. 3d at 476 (rejecting the argument that "reckless or negligent disregard of a potentially prejudicial circumstance violates the Fifth Amendment guarantee of due process"); *United States v. Banks*, 27 Fed. Appx. 354, 357 (6th Cir. 2001) ("Our Circuit has recognized that where delay is due to simple negligence and not a concerted effort by the government to gain an advantage, no due process violation exists.").

In sum, "[a] defendant bears a 'heavy burden' on a claim that a pre-arrest delay violated due process." *Mayes v. Hoffner*, 2016 WL 3385084 (E.D. Mich. June 20, 2016).  Indeed, the Sixth Circuit has explained that "[t]he standard for pre-indictment delay is nearly insurmountable, especially because proof of actual prejudice is always speculative." *Rogers*,

118 F.3d at 477, n. 10.  *See also Miracle v. Haas*, 2016 WL 1583807 at * 7 (E.D. Mich. April 20, 2016).

      In the instant case, the state appellate court reasonably concluded that Clark failed to show that the State's delay in charging him violated his due process rights.  The state appellate court applied the correct standard to Clark's claim, observing that a due process violation based on pre-indictment delay requires a showing both of substantial prejudice and that there was no justifiable reason for the delay.[6]  *See Clark*, 67 N.E.3d at 193-194.  The state appellate court then determined Clark had failed to show substantial prejudice.  The court noted there was no allegation of missing or destroyed evidence and found Clark's claim of prejudice to be speculative, noting he had "not identified any exculpatory evidence that has been lost, let alone show[n] how that evidence could not otherwise be obtained."  *Id*.  The state appellate court further noted the existence of a justifiable reason for the delay, stating "Clark's identity as the serial rapist was unknown until August 27, 2014, and he was indicted shortly thereafter on January 7, 2015, after an investigation and re-verification of the DNA matches."  *Id*.

      Clark has failed to show the state appellate court's decision is contrary to or an unreasonable application of clearly established federal law.  First, Clark has not demonstrated that the state appellate court unreasonably determined he failed to show actual prejudice.  As that court noted, Clark has not identified any lost or missing evidence, nor has he detailed how the allegedly faded memories of his surviving victims prejudiced him.  Clark has also failed to explain with any particularity how the death of one of the alleged victims ("C.S.") resulted in

---

[6] Although the state appellate court decision did not expressly cite *Lovasco* or *Marion*, it relied on *State v. Luck*, 15 Ohio St.3d 150, 472 N.E.2d 1097 (1984), which cites both Supreme Court cases.

substantial and actual prejudice at trial.  As noted above, federal courts have rejected claims of pre-indictment delay based on speculative and unsupported assertions of prejudice.  *See e.g.,* *Marion*, 404 U.S. at 325-326 (finding the possibility "that memories will dim, witnesses become inaccessible, and evidence be lost" is not sufficient to show prejudice from the delay); *Gales*, 2018 WL 2473672 at * 8 (habeas petitioner failed to show prejudice where "he did not detail what the witnesses, whose memories are alleged to have faded, would have testified to"); *Randle*, 544 F.Supp.2d at 631 (finding "a vague assertion that memories have diminished, witnesses have been lost, and documents have been misplaced does not establish actual prejudice from a pre-charge delay").

Second, Clark has not demonstrated the state appellate court unreasonably concluded there was a justifiable reason for the delay; i.e., the newly obtained DNA evidence linking Clark to all three victims.  Although Clark suggests an improper intent can be inferred because he claims the police had access to his DNA at the time of the alleged rapes, this would at best support an inference of negligence, which is insufficient to show improper intent on the part of law enforcement.  *See Parker*, 595 Fed. Appx. at 601.  Because Clark has failed to show that the State delayed his prosecution for an improper purpose and/or in order to gain a tactical advantage, he cannot prevail on his due process claim based on pre-indictment delay.  *See Brown*, 959 F.2d at 66.

Accordingly, and for all the reasons set forth above, the Court finds Clark has not shown that the state appellate court decision was contrary to or an unreasonable application of clearly established federal law.  Ground One, therefore, fails on the merits.

## V. Conclusion

For all the reasons set forth above, it is recommended that the Petition be DENIED.


Date: January 3, 2019                          _s/ Jonathan Greenberg_
                                               Jonathan D. Greenberg
                                               United States Magistrate Judge


### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**